UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BUSINESSES FOR A BETTER NEW YORK, et al.,        **REPORT AND**
                                                 **RECOMMENDATION**
                     Plaintiffs,

v.
                                                 06-CV-0669-A(M)
LINDA ANGELLO, et al.,

                     Defendants.

_____


This case was referred to me by Hon. Richard J. Arcara, to hear and report in accordance with 28 U.S.C. §§636(b)(1)(A), (B) and (C) (Dkt. ##33, 37). Before me is defendants' motion to dismiss plaintiffs' Complaint pursuant to Fed. R. Civ. P. Rule 12(b)(6) (Dkt. #30).[1]  Oral argument of the motion was held on May 17, 2007. For the following reasons, I recommend that defendants' motion be granted.


## **BACKGROUND**

Plaintiff Businesses for a Better New York ("BBNY") is a not-for-profit partnership formed to challenge the constitutionality of New York Labor Law §§240(1) and 241(6) (Dkt. #1, ¶4). The other plaintiffs are construction companies operating in the State of New York who claim to be adversely affected by the operation of these statutes.[2]  The

---

[1]  Defendants' motion is supported by a Memorandum of Law (Dkt. #31) and Declaration of Stephen Gawlik, Esq. (Dkt #32). In opposition, plaintiffs submitted the Declaration of Hugh Russ, III, Esq. (Dkt. #39-1) and Memorandum of Law (Dkt. #39-4). In reply, defendants submitted a Memorandum of Law (Dkt. #40).

[2]  Although I have some concerns regarding BBNY's standing as a plaintiff in this action (since there is no allegation that BBNY itself has been adversely affected by the statutes), the other

Complaint challenges the constitutionality of the statutes on three grounds: first, that the statutes violate the Equal Protection Clause of the Fourteenth Amendment; second, that the statutes violate the Interstate Commerce Clause; and third, that the statutes are preempted by the Occupational Safety and Health Administration Act of 1970 ("OSHA").

**The Statutes at Issue**

New York Labor Law §240(1), the so called "scaffold law," obligates contractors and property owners to protect the safety of workers engaged in height-related construction of a building or structure. Ross v. Curtis-Palmer Hydro-Electric Co., 81 N.Y.2d 494, 500 (1993). The statute provides that:

> "All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

The New York Court of Appeals has held that Labor Law §240(1) is "aimed only at elevation-related hazards and that, accordingly, injuries resulting from other types of hazards are not compensable under that statute even if proximately caused by the absence of an adequate scaffold or other required safety device." Ross, supra, 81 N.Y.2d at 500 (citing Rocovich v. Consolidated Edison Co., 78 N.Y.2d 509 (1991)). Liability under Labor Law §240(1) is "absolute" to the extent that owners or contractors not actually involved in

---

plaintiffs clearly have standing.

construction can be held liable regardless of whether they exercise supervision or control over the work.  Haimes v New York Tel. Co., 46 N.Y.2d 132, 136 (1978).

> New York Labor Law §241(6) provides that:
>
> "All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements:
>
> * * *
>
> (6) All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places. The commissioner may make rules to carry into effect the provisions of this subdivision, and the owners and contractors and their agents for such work, except owners of one and two-family dwellings who contract for but do not direct or control the work, shall comply therewith."

Unlike §240(1), the requirements of §241(6) apply without regard to any height differential.  See Yaeger v. New York Telephone Co., 148 A.D.2d 308, 312 (1st Dep't. 1989) ("Labor Law §241. . . imposes a general obligation upon contractors and owners to provide a safe and reasonable place of employment where construction, excavation and demolition work is being performed. . . .  [T]hat is, section 240 should be invoked where an employee's injury is somehow related to work performed at heights whereas section 241 is applicable to ordinary construction work.").  The statute imposes a non-delegable duty upon owners, general contractors and their agents to comply with the specific rules and regulations regarding safety set forth in the New York State Industrial Code (N.Y. Comp. Codes R. & Regs. Title 12, §§ 23.1-1, *et seq.*), with liability predicated upon proof that a worker's injuries were proximately

caused by the violation of a specific command of the New York State Industrial Code. Ross, supra, at 502-504.

## **DISCUSSION AND ANALYSIS**

**A. Legal Standard**

Defendants move for dismissal of the Complaint for "failure to state a claim upon which relief can be granted", pursuant to Fed.R.Civ.P. 12(b)(6). In deciding the motion, the court must assume all well-pleaded factual allegations contained in the Complaint to be true. Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999), cert. denied, 531 U.S. 1052 (2000). However, the same presumption does not apply to legal conclusions. "Although for the purposes of [a] motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 2944, 92 L. Ed. 2d 209 (1986).

Therefore, notwithstanding the fact that this motion is addressed to the face of the Complaint, plaintiffs' allegations of unconstitutionality or preemption as to Labor Law §§240(1) and 241(6) are not entitled to a presumption of correctness.

**B.  Plaintiffs' Causes of Action**

    **1.       Equal Protection**

The Complaint alleges that Labor Law §§240(1) and 241(6) violate the Equal Protection Clause of the Fourteenth Amendment since they "result directly in discrimination against individuals operating construction businesses in New York, because the statutes result in different treatment for New York constructions businesses and construction workers in other states . . . ." (Dkt. #1, ¶50).  However, at oral argument of the motion, plaintiffs expressly abandoned this challenge, and instead argue that the statutes violate the Equal Protection Clause because "construction businesses that perform their work at ground level are not subject to the higher insurance premiums" (Dkt. #39-4, p. 9).  Plaintiffs request leave to amend the Complaint to the extent that it does not articulate this claim (Dkt. #39-4, p. 9 n.4).  At oral argument of the motion, defendants' attorney consented to the amendment. Therefore, in the interest of judicial economy,  I deem the Complaint amended to allege the equal protection violation set forth in plaintiff's Memorandum of Law (Dkt. #39-4, Point II).

Plaintiffs concede that because the legislative classifications in the Labor Law implicate neither a fundamental right nor a suspect class calling for heightened judicial scrutiny, the proper equal protection analysis involves application under the "rational basis" standard: "Under the 'rational basis' test, the Court must determine whether the statutes at issue bear a rational relation to a legitimate state purpose"  (Dkt. #39-4, p. 10).  That test involves a two-pronged inquiry: "In determining whether a challenged classification is rationally related to achievement of a legitimate state purpose, we must answer two questions:

(1) Does the challenged legislation have a legitimate purpose? and (2) Was it reasonable for the lawmakers to believe that use of the challenged classification would promote that purpose?" Western and Southern Life Insurance Co. v. State Board of Equalization of California, 451 U.S. 648, 668, 101 S. Ct. 2070, 2083, 68 L. Ed. 2d 514 (1981).

Plaintiffs admit that the statutes have a legitimate purpose. "BBNY does not contend that the purpose underlying [the] Statutes is not legitimate. In fact, BBNY concedes that the original motivation to protect workers in New York was appropriate, even noble." (Dkt. #39-4, p. 10). In light of that admission, the only remaining question is whether it was "reasonable for the lawmakers to believe that use of the challenged classification would promote that purpose". Western and Southern Life Insurance Co., supra. "Where there are 'plausible reasons' for [legislative] action, 'our inquiry is at an end.'" Federal Communications Commission v. Beach Communications, Inc., 508 U.S. 307, 313-14, 113 S. Ct. 2096, 2101, 124 L. Ed. 2d 211 (1993).

Ignoring that question altogether, plaintiffs argue instead that in order to withstand an equal protection challenge, "the means by which the state purports to accomplish its stated purpose must succeed" (Dkt. #34-9, p. 10 (citing Western and Southern Life Insurance Co., supra)), and that the statutes at issue "no longer bear a rational relation to this legitimate state purpose, because they do not minimize injuries to construction workers in New York" (Id., p. 10). Plaintiffs' reliance upon Western and Southern Life Insurance Co. in support of this argument is unfounded, because that case states exactly the opposite: "But whether *in fact* the provision will accomplish its objectives is not the question: the Equal Protection Clause is satisfied if we conclude that the . . . Legislature *rationally could have*

*believed* that the [classification] would promote its objective". 451 U.S. at 671-2, 101 S. Ct. at 2085 (emphasis in original).

It is not defendants' burden to justify the classification chosen by the Legislature. "The Government 'has no obligation to produce evidence to sustain the rationality of a statutory classification'." Jankowski-Burczyk v. Immigration and Naturalization Service, 291 F. 3d 172, 178 (2d. Cir. 2002). Instead, "those attacking the rationality of the legislative classification have the burden 'to negative every conceivable basis which might support it'". Beach Communications, supra, 508 U.S. at 315, 113 S. Ct. at 2102. Because plaintiffs do not even argue that the New York Legislature had no rational basis for imposing additional requirements upon employers engaging in height-related work[3], their equal protection challenge must fail.

**2.     Commerce Clause**

Plaintiffs' second cause of action alleges that Labor Law §§240(1) and 241(6) violate the Commerce Clause (U.S. Constitution, Art. I, §8, Cl. 3) by "penalizing the construction business conducted in the State of New York and construction workers in the State of New York by requiring them to pay higher insurance premiums for the same insurance coverage available to construction businesses in other states" (Dkt. #1, ¶54). While plaintiffs argue that "[a] state may not treat its own citizens in a manner that is different than the manner

---

[3] "The contemplated hazards are those related to the effects of gravity where protective devices are called for either because of a difference between the elevation level of the required work and a lower level or a difference between the elevation level where the worker is positioned and the higher level of the materials or load being hoisted or secured. It is because of the special hazards in having to work in these circumstances, we believe, that the Legislature has seen fit to give the worker the exceptional protection that section 240(1) provides." Rocovich, supra, 78 N.Y. 2d at 514.

in which the state treats citizens of other states" (Dkt. #39-4, p. 15), they admit that the challenged legislation does not discriminate, "requiring both in-state and out-of-state businesses to pay higher insurance premiums" (Id., p. 12, emphasis added).[4]

If the state regulation does not discriminate against interstate commerce, but "regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits". Pike v. Bruce Church, Inc., 397 U.S. 137, 142, 90 S. Ct. 844, 847, 25 L. Ed. 2d 174 (1970). Because plaintiffs acknowledge that the statutes in question were "intended to promote safety" (Dkt. # 34-9, p. 12), their Commerce Clause challenge must likewise fail, since "in the field of safety . . . the propriety of local regulation has long been recognized". Pike, supra, 397 U.S. at 143, 90 S. Ct. at 848.

### 3. Preemption

---

[4] The cases relied upon by plaintiffs do not compel a different result. In each case cited by plaintiffs (Dkt. #39-4, pp. 13-15) the state regulation at issue on its face favored in-state interests over out-of-state interests, thereby making the regulation subject to heightened scrutiny. See e.g., CWM Chemical Services, LLC v. Roth, 6 N.Y.3d 410, 421 (2003) (finding state law that taxed disposal of remediation waste resulting from out-of-state hazardous waste cleanups, but not the same kind of waste generated during in-state hazardous waste cleanups, facially discriminatory in violation of the Commerce Clause); West Lynn Creamery, Inc. v. Healy, 512 U.S. 186, 195, 114 S. Ct. 2205, 129 L. Ed. 2d 157 (1994) (state law which subjected all milk sold in-state to an assessment that was then distributed to in-state dairy farmers was "clearly unconstitutional" insofar as its "avowed purpose and . . . undisputed effect [was] to enable higher cost [in-state] diary farmers to compete with lower cost dairy farmers in other States"); Camps Newfound /Owatonna v. Town of Harrison, 520 U.S. 564, 576, 117 S. Ct. 1590, 1597, 137 L. Ed. 2d 852 (1997) (state statute that "expressly distinguishe[d] between entities that serve a principally interstate clientele and those that primarily serve an intrastate market, singling out camps that serve mostly in-states for beneficial tax treatment, and penalizing those camps that do a principally interstate business" violated the Commerce Clause).

Plaintiffs' third cause of action alleges that Labor Law §§240(1) and 241(6) are preempted by OSHA, 29 U.S.C. §§651 *et seq.* (Dkt. #1, ¶¶56-60).  OSHA was enacted in order "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources." 29 U.S.C. §651(b).  To implement the Act's objectives, the Secretary of Labor was empowered "to set mandatory occupational safety and health standards applicable to businesses affecting interstate commerce." 29 U.S.C. §651(b)(3).  OSHA allows states to submit to the Secretary of Labor their own occupational safety and health standards to supplant the federal standards. 29 U.S.C. §667(b).  Although OSHA reserves to the states the power to enact occupational safety and health laws in areas in which no federal standard exists, it has been interpreted to preclude "any state regulation of an occupational safety or health issue with respect to which a federal standard has been established, unless a state plan has been submitted and approved." Gade v. National Solid Waste Mgmt. Assoc., 505 U.S. 88, 102, 112 S. Ct. 2374, 2385, 120 L. Ed. 2d 73 (1992).

        Citing Gade, plaintiffs argue that "New York has not submitted a plan for approval, having withdrawn its proposed plan in 1975.  Thus, the Statutes cannot have been approved by the Secretary of Labor, and they are preempted". (Dkt. #39-4, p. 22).  However, this argument fails to account for OSHA's "savings clause", which was not at issue in Gade:[5] "Nothing in this Act shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or

---

[5] "*Gade* . . . involved a state licensing law, not a state tort claim.  Critically, licensing laws do not fall within OSHA's savings clause while protective labor laws do." Sakellaridis v. Polar Air Cargo, Inc., 104 F. Supp. 2d 160, 164 (E.D.N.Y. 2000).

statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment." 29 U.S.C. §653(b)(4).

Plaintiffs acknowledge that "the question of whether a certain state action is preempted by federal law is one of congressional intent" (Dkt. #39-4, p. 17).  Given the clear expression of congressional intent in OSHA's "savings clause", plaintiffs' preemption argument must be rejected. "There is a consensus that the savings clause operates to save state tort rules . . . .   The savings clause plainly states that workers' statutory remedies for personal injuries are preserved.  It is not consequential that the standard of care is prescribed by the common law, a separate statutory scheme, or an administrative scheme.  Because section 241(6) provides a remedy for personal injuries suffered in the course of employment, it is not preempted."  Sakellaridis, supra, 104 F. Supp. 2d at 163, 164; see also Atlas Roofing Co., Inc. v. Occupational Safety and Health Review Commission, 430 U.S. 442, 445 97 S. Ct. 1261, 1264, 51 L. Ed. 2d 464 (1977) ("existing state statutory and common-law remedies for actual injury and death remain unaffected" by OSHA); Pedraza v. Shell Oil Co., 942 F. 2d 48, 53 (1st Cir. 1991), cert. denied, 502 U.S. 1082 (1992) ("There is a solid consensus that section 4(b)(4) [29 U.S.C. §653(b)(4)] operates to save state tort rules from preemption"); Lindsey v. Caterpillar, Inc., 480 F. 3d 202, 209 (3d Cir. 2007) ("We join with those courts whose holdings have formed a 'solid consensus that [29 U.S.C. §653(b)(4)] operates to save state tort rules from preemption'"); Irwin v. St. Joseph's Intercommunity Hospital, 236 A.D. 2d 123, 129 (4th Dep't 1997) ("We conclude that the OSH Act's savings clause expressly preserves from

preemption plaintiffs' right under Labor Law §241(6) to seek damages for injuries arising during the course of plaintiff's employment").

Although the enforcement of Labor Law §§240(1) and 241(6) may to some extent overlap or conflict with OSHA's regulatory objective, it has been recognized that "Congress intended State law statutory and common-law duties, rights and liabilities to survive, and . . . was willing to tolerate any tension that resulted". People v. Pymm, 76 N.Y.2d 511, 523-24 (1990), cert. denied, 489 U.S. 1085 (1991). See also Irwin, supra, 236 A.D.2d at 131 ("Section 241(6) is regulatory in the sense that the threat of liability for damages to an injured worker will compel owners and contractors to ensure compliance with the Industrial Code. In our view, however, 'that regulatory consequence was something that Congress was quite willing to accept'").

## CONCLUSION

For these reasons, I recommend that defendants' motion to dismiss (Dkt. #30) be GRANTED. Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate

judge in the first instance.  See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.

**SO ORDERED.**

DATED:   Buffalo, New York
         May 31, 2007

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge